UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Brad Keith Sigmon, | ) | Civil Action No.:  8:13-cv-01399-RBH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Bryan P. Stirling, *Commissioner, South* | ) | |
| *Carolina Department of Corrections*, and | ) | |
| Willie D. Davis, *Warden of Kirkland* | ) | |
| *Correctional Institution*, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

Petitioner Brad Keith Sigmon, a state prisoner sentenced to death and represented by

counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter is

before the Court for consideration of Petitioner's objections to the Report and Recommendation ("R

& R") of United States Magistrate Judge Jacquelyn D. Austin, who recommends granting

Respondents' motion for summary judgment and denying and dismissing Petitioner's habeas

petition with prejudice.[1]  The Court adopts the R & R for the reasons herein.

## Background[2]

On April 27, 2001, Petitioner entered the home of David and Gladys Larke and beat them to

death with a baseball bat.  Petitioner had been in a volatile relationship with the Larkes' daughter,

Rebecca Barbare ("Rebecca").  Sometime before the murders, Rebecca had ended her relationship

with Petitioner and was staying at her parents' home.

---

[1]     This matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule
73.02(B)(2)(c) for the District of South Carolina.

[2]     The Magistrate Judge's R & R thoroughly summarizes the factual and procedural history, which the Court
briefly recounts here.

According to Petitioner's statement to law enforcement, his intentions were to go into the Larkes' home and tie them up, then kidnap Rebecca so he could talk to her. [App. 1473].[3]  Instead, Petitioner beat the Larkes to death with each sustaining up to nine blows to the skull. [App. 1627, 1640].  After killing the Larkes, Petitioner waited in their home for Rebecca to return home from taking her children to school. [App. 1474].

When Rebecca returned to her parents' home after taking her children to school on the morning of April 27th, Petitioner took Rebecca in a car and tried to flee. *Id*.  Rebecca eventually escaped after being shot. *Id*.  Petitioner then fled to Tennessee where he was captured in a campground approximately 10 days later.  Petitioner confessed to both Tennessee and South Carolina law enforcement officers.

Petitioner was indicted in November 2001 on two counts of first degree murder and one count of first degree burglary.  Petitioner was represented by John Abdalla, Esq. ("Abdalla") and Frank Eppes, Jr., Esq. ("Eppes") at trial.  On July 19, 2002, the jury found Petitioner guilty on all three charges. [App. 1705].

Following a sentencing proceeding, the jury recommended a sentence of death after finding three statutory aggravating factors: 1) two or more persons were murdered by the Petitioner by one act or pursuant to one scheme or course of conduct; 2) the murder was committed while in the commission of a burglary; and 3) the murder was committed while in the commission of physical torture. [App. 2384].  On July 21, 2002, the circuit court sentenced Petitioner to thirty years for the burglary charge and death for the two murder charges. [App. 2385].

---

[3]      For reference, [App. ____] refers to the state court appendix and can be found on this Court's docket at docket entries 32-1 through 33-8.

On December 19, 2005, the Supreme Court of South Carolina affirmed Petitioner's murder convictions and death sentence. [App. 2429-33]. Remittitur was issued on January 13, 2006. [ECF No. 34]. Petitioner then filed a petition for writ of certiorari to the United States Supreme Court, which was denied on June 26, 2006. [ECF No. 34-3].

On October 13, 2006, Petitioner filed a pro se application for post-conviction relief ("PCR") in state court. The court appointed William H. Ehlies, II, Esq. ("Ehlies") and Teresa L. Norris ("Norris") to represent Petitioner in his post-conviction matter. Petitioner's PCR counsel filed an amended PCR application on June 4, 2008. [App. 2478-81]. An evidentiary hearing was held on August 4, 2008, before the Honorable J.C. Nicholson, Jr. [App. 2718-2812]. In an order filed July 20, 2009, Judge Nicholson denied and dismissed Petitioner's PCR application. [App. 2846-93].

Petitioner appealed the denial of his PCR application to the South Carolina Supreme Court raising six grounds for relief. [ECF No. 34-5 at 2-4]. The South Carolina Supreme Court granted certiorari as to three issues and requested additional briefing. [ECF No. 34-8]. On March 20, 2013, the South Carolina Supreme Court affirmed the circuit court's dismissal of Petitioner's PCR application in a published opinion. [ECF No. 34-12]. Remittitur was issued on May 13, 2013.

Petitioner then filed a petition for writ of certiorari in the United States Supreme Court, which was denied on November 18, 2013. [ECF No. 59-3].

On May 10, 2013, Petitioner commenced the instant § 2254 action by filing a motion to stay his execution and a motion to appoint counsel. *See* [ECF No. 1]. On May 23, 2013, the Court stayed Petitioner's execution and appointed Norris and Ehlies as Petitioner's counsel. [ECF Nos. 17; 19]. Petitioner filed his petition on August 21, 2013, raising six grounds for relief. [ECF No. 42]. The Court then extended Petitioner's stay of execution during the pendency of this case. [ECF No

3

43].

On January 17, 2014, in light of the U.S. Supreme Court's decision in *Martinez v. Ryan*, 566 U.S. 1 (2012), the Court appointed Jeffrey P. Bloom, Esq. to investigate whether Petitioner may have additional claims not previously presented that may nevertheless be asserted under *Martinez*. [ECF No. 81]. On April 17, 2014, Mr. Bloom reported to the Court that he had discovered five additional potential claims that had not been previously asserted. [ECF No. 106].

On July 23, 2014, the Court granted Petitioner's motion to amend his habeas petition and to substitute counsel. [ECF No. 123]. Petitioner filed an amended petition on August 8, 2014, raising the six grounds raised in the original petition and the five new grounds discovered by Mr. Bloom.[4] [ECF No. 131]. Petitioner's amended petition for writ of habeas corpus asserts the following grounds for relief:

I.    Trial counsel rendered ineffective assistance of counsel, in violation of Sigmon's rights under the Sixth and Fourteenth Amendments, by failing to object to the state's improper cross-examination of a defense sentencing expert on adaptability to confinement and failing to object to the state's closing arguments concerning the day to day details of prison life.

II.    The Supreme Court of South Carolina violated both the due process and equal protection clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States by exercising its discretion in an arbitrary and capricious manner on Ground I by granting relief to other death-sentenced inmates while denying certiorari and relief to Sigmon when he presented the same issue with nearly identical facts and is therefore similarly situated.

III.    Trial counsel rendered ineffective assistance of counsel, in derogation of Sigmon's Sixth and Fourteenth Amendment rights, for failing to object to the solicitor's

---

[4]    On August 22, 2014, Petitioner filed a motion to stay informing the Court that the he had filed a second PCR action in state court raising the five new and unexhausted grounds discovered by Mr. Bloom. [ECF No. 142]. The Court stayed this action while Petitioner's second PCR application was pending. [ECF No. 161]. Petitioner's second PCR action was dismissed as successive and barred by the statute of limitation in an order filed March 3, 2017. [ECF No. 204-16]. This Court lifted the stay after the South Carolina Supreme Court dismissed Petitioner's appeal from the dismissal of his second PCR action. [ECF No. 195].

improper closing arguments wherein the solicitor gave his personal opinions that death was the appropriate punishment and made improper "send a message" arguments.

IV. Trial counsel rendered ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments for failing to request a charge on the statutory mitigating circumstance of age or mentality, when evidence presented at trial established that Sigmon was extremely intoxicated at the time of the murders, having consumed large quantities of beer and crack cocaine beforehand.

V. Trial counsel rendered ineffective assistance of counsel, in derogation of petitioner's Sixth and Fourteenth Amendment rights, for failing to object to the trial court's instructions that a non-statutory mitigating circumstance was one the defendant "claims" lessens his culpability since this improperly impugned the legitimacy of non-statutory mitigating evidence under the Eighth and Fourteenth Amendments.

VI. Trial counsel rendered ineffective assistance of counsel, in derogation of Sigmon's Sixth and Fourteenth Amendment rights, by requesting and obtaining the statutory "mitigating" circumstance of "provocation by the victim" based on the testimony of three defense witnesses who were called to testify about their bad relationships with Sigmon's ex-girlfriend, and thereby blame her for her parents' murders, since this patently offensive strategy was very likely to inflame the jury.

VII. Sigmon was denied his right to effective assistance of counsel per the Sixth and Fourteenth Amendments by the failure of trial counsel to interview and call as witnesses additional family members and community witnesses, and by inadequately interviewing those family members that they did call as witnesses, and/or by failing to call the county detention center psychiatrist as a witness, and/or by failing to introduce an available video exhibit, such that substantial mitigating evidence was not presented and Sigmon was prejudiced thereby at the capital sentencing phase of his trial.

VIII. Sigmon was denied his right to effective assistance of counsel per the Sixth and Fourteenth amendments, and per S.C. Code §16-3-26(b)(1), in that the "second chair" attorney – who was not qualified under state law to serve as lead counsel – nonetheless served and acted as "lead counsel," contrary to the order of the court appointing counsel, and without objection from actual lead counsel, such that the trial attorneys rendered ineffective assistance of counsel, and the petitioner was prejudiced thereby at the capital sentencing phase of his trial.

IX. Sigmon was denied his right to effective assistance of counsel per the Sixth and Fourteenth amendments in that trial counsel failed to object to the

5

petitioner being made to wear a stun-belt in court which was visible to jurors during the proceedings, and the petitioner was prejudiced thereby at the capital sentencing phase of his trial.

X.    Sigmon was denied his right to effective assistance of counsel per the Sixth and Fourteenth amendments, and per S.C. Code §16-3-28, in that trial counsel was unaware that the second defense attorney could also have presented a closing argument at sentencing after the petitioner, and the petitioner was prejudiced thereby at the capital sentencing phase of his trial.

XI.   Sigmon was denied his right to effective assistance of appellate counsel on direct appeal per the Sixth and Fourteenth amendments for failure to raise as issues the objections made by trial counsel at voir dire, and the petitioner was prejudiced thereby as it relates to the capital sentencing phase of his trial.[5]

## Legal Standards

### I.    Review of the Magistrate Judge's R & R

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court must conduct a de novo review of those portions of the R & R to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the

---

[5]    Petitioner has withdrawn ground eleven. [ECF No. 213 at 3 n.2].

Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983).

## II.      Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see generally* Rule 12 of the Rules Governing Section 2254 Cases ("The Federal Rules of Civil Procedure . . . , to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."); *Brandt v. Gooding*, 636 F.3d 124, 132 (4th Cir. 2011) ("Federal Rule of Civil Procedure 56 'applies to habeas proceedings.'" (quoting *Maynard v. Dixon*, 943 F.2d 407, 412 (4th Cir. 1991))). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The evidence must be viewed in the light most favorable to the non-moving party, with all reasonable inferences drawn in that party's favor. The court therefore cannot weigh the evidence or make credibility determinations." *Reyazuddin v. Montgomery Cty.*, 789 F.3d 407, 413 (4th Cir. 2015) (internal citation and quotation marks omitted).

## Discussion

As mentioned above, Petitioner presently seeks habeas relief on ten grounds. The Magistrate Judge recommended granting summary judgment on all ten grounds. Petitioner has filed objections to the Magistrate Judge's R&R arguing that Respondent's motion for summary judgment should be

denied.  Petitioner also argues the Court should hold an evidentiary hearing on the *Martinez* claims.

## I.    Preserved Grounds

### A.    Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This is a "difficult to meet and highly deferential standard for evaluating

state-court rulings, which demands that state-court decisions be given the benefit of the doubt."

*Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted).

"Section 2254(d)(1) describes the standard of review to be applied to claims challenging how the

state courts applied federal law, while § 2254(d)(2) describes the standard to be applied to claims

challenging how the state courts determined the facts."  *Winston v. Kelly*, 592 F.3d 535, 553 (4th

Cir. 2010).  "'[A] determination on a factual issue made by a State court shall be presumed correct,'

and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'"

*Tucker v. Ozmint*, 350 F.3d 433, 439 (4th Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)).  "Under §

2254(d), an *unreasonable* application of federal law differs from an *incorrect* application of federal

law, and a state court 'must be granted a deference and latitude that are not in operation when the

case involves review under the Strickland standard itself.'"  *Jones v. Clarke*, 783 F.3d 987, 991 (4th

8

Cir. 2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).

**B.    Ground One**

In ground one, Petitioner claims trial counsel rendered ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), by failing to object to the state's cross-examination of a defense sentencing expert on prison adaptability.  Within ground one, Petitioner also claims trial counsel was ineffective under *Strickland* for failing to object to the state's closing arguments concerning the details of prison life.

In *Strickland v. Washington*, the United States Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. 668, 687 (1984). To prove that counsel's performance was deficient, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," *Id*. at 688, and that the "acts and omissions" of counsel were, in light of all the circumstances, "outside the range of professionally competent assistance." *Id*. at 690. Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689; *see also, Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis"); *Spencer v. Murray*, 18 F.3d 229,233 (4th Cir. 1994) (court must "presume that challenged acts are likely the result of sound trial strategy.").

To satisfy *Strickland's* prejudice prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Id*. The two prongs of the *Strickland* test are "separate and distinct elements of an ineffective assistance claim," and a successful petition "must show both deficient performance and prejudice." *Spencer*, 18 F.3d at 233. Therefore, a court need not review the reasonableness of counsel's performance if a petitioner fails to show prejudice. *Quesinberry v. Taylor*, 162 F.3d 273, 278 (4th Cir. 1998).

Regarding the prejudice prong, "[w]hen a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id*. at 695. "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id*. "In jurisdictions such as South Carolina, where a jury must return a unanimous verdict . . . , the prejudice prong of *Strickland* is met where 'there is a reasonable probability that at least one juror would have struck a different balance.'" *Hope v. Cartledge*, 857 F.3d 518, 524 (4th Cir. 2017) (quoting *Wiggins v. Smith*, 539 U.S. 510, 537 (2003).

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Richter*, 562 U.S. at 101. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id*.; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas"). Even if a state court decision questionably constitutes an unreasonable application of federal law, the

10

"state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent. *Id*.

### (1)    Facts

Petitioner's trial counsel called James Aiken ("Aiken") as a defense expert witness on prison adaptability and the conditions of prison. [App. 2006].  On cross-examination, Aiken testified that Petitioner could have regularly scheduled visitors, the ability to watch television, recreation, access to a library, access to a telephone, canteen, showers, the ability take educational classes, send and receive mail, religious services, and a personal locker. *Id*. at 2022-2025.  Petitioner's trial counsel did not object to any portion of the solicitor's cross-examination of Aiken.

In his penalty phase closing argument, the solicitor argued that with life imprisonment, Petitioner would still have mail, tv, three meals a day, someone to do his laundry, health care, and recreation.  Petitioner's trial counsel did not object. [App. 2066-67].

### (2)    PCR Order

The PCR court found that trial counsel were not deficient and that Petitioner suffered no prejudice as there was no basis for an objection for either the cross-examination or resulting argument by the solicitor. [App. 2869].  The PCR court stated that because general conditions evidence was intentionally elicited during Aiken's direct examination by defense counsel, the solicitor was entitled to cross-examine the witness on the conditions issue. [App. 2874].  The PCR

court stated further that "since the evidence was in the record, and both defense and the State argued

prison conditions based on the evidence, the record based responsive argument cannot support proof

of error, as there could be no reasonable basis for an objection." *Id*.

Disposing of ground one, the PCR court found:

> In sum, Applicant has failed to show error and prejudice where the defense essentially received what was requested, that is to introduce evidence (of their own choosing and through a defense witness as opposed to a prosecution witness (Mr. Sligh)), and to argue that the punishment of life imprisonment was an extraordinarily harsh sentence, and the State merely cross-examined the defense witness on same. Not only was this case tried without the benefit of *Burkhart*, it is also specifically distinguishable from *Burkhart* in the major respect of who offered the evidence when, and whether there is fair response. Moreover, the record demonstrates that the balance of evidence on each side fails to support a finding of prejudice on this record. Lastly, given the overwhelming evidence of aggravating circumstances, and the limited mitigation, there could be no "reasonable probability that, absent [counsel's] errors, the sentencer - including an appellate court, to the extent it independently reweighs the evidence - would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Jones*, 332 S.C. at 340, 504 S.E.2d at 829. There is overwhelmingly strong evidence in aggravation, including the finding of torture, burglary first degree, and the murder of not one but two elderly victims in a vicious and personal beating with a baseball bat, the victims having been surprised in their own home. Applicant has not established error on these particular facts, however, if error could be shown, he has not established prejudice such that would entitle him to a new proceeding.

[App. 2875-76].

**(3)    R & R**

The Magistrate Judge recommended dismissing ground one. As to the failure to object to

the cross examination of Aiken on general prison conditions, the Magistrate Judge stated the PCR

12

court's finding that counsel were not deficient was not contrary to, or an unreasonable application of, any clearly established federal law. [R&R, ECF No. 223 at 31]. The Magistrate Judge found that "[g]iven the state of the law at the time of Petitioner's trial and trial counsel's testimony, the PCR court's determination that trial counsel made tactical decisions not to object to the solicitor's cross-examination of Aiken and the solicitor's closing argument so that they could present their own prison condition evidence is far from unreasonable." *Id*. at 36. In summary, the Magistrate Judge concluded that the PCR court reasonably applied *Strickland* and based its decision on a reasonable determination of the facts.

### (4)    Discussion

Petitioner objected to the Magistrate Judge's recommendation that ground one be dismissed arguing the PCR court unreasonably applied the law to the facts of Petitioner's case by failing to recognize that trial counsel had presented evidence without a full understanding of the ramifications of that evidence. Petitioner contends that failure to understand the nature of the evidence presented is an unreasonable decision under the *Strickland* standards. Petitioner further contends the evidence allowed the State to make a compelling argument it otherwise would not have been able to make, which was prejudicial to Petitioner.

Petitioner's trial counsel may have arguably misunderstood the ramifications of presenting Aiken as a defense witness on prison adaptability and may have not fully understood the nuances between prison adaptability evidence and general prison conditions evidence. *See Bowman v. State*, 809 S.E.2d 232, 241 (S.C. 2018) (recognizing the unique distinction South Carolina jurisprudence has drawn between evidence of prison adaptability, which S.C. has held is relevant and admissible, and evidence of general prison conditions, which S.C. has held is not). However, at the time of

trial, the admission of general prison condition evidence was not recognized as a reversible error, especially where defense counsel opened the door to such evidence. *See Bowman*, 809 S.E.2d at 243-44 (stating "once the defendant opens the door, the solicitor's invited response is appropriate so long as it is does not unfairly prejudice the defendant . . .unless the State's response is inappropriate or unfairly prejudicial, counsel is not deficient for failing to object").

Since trial counsel opened the door to general prison condition evidence with Aiken's direct examination, it is doubtful whether trial counsel even had a valid basis for an objection to the solicitor's cross-examination of Aiken. As to the closing argument, it was certainly a reasonable trial strategy not to object to opposing counsel's closing argument, especially when the argument was supported by the evidence at trial. Accordingly, the PCR court's finding that there was no basis for an objection and that trial counsel was not deficient was not contrary to, or an unreasonable application of, clearly established Federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented.

Even if there was a valid basis for an objection to either the cross-examination or the closing argument, Petitioner has failed to demonstrate prejudice. As noted by the PCR court, this case involved overwhelming evidence of aggravating circumstances, including torture, burglary first degree, and the murder of two victims during one course of conduct. Given the overwhelming evidence of aggravating circumstances, and the limited mitigation evidence, the PCR court concluded there was no reasonable probability that the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. [App. 2876]. The PCR court's finding of no prejudice was not contrary to, or an unreasonable application of, clearly established Federal law, and was not based on an unreasonable determination of the facts.

The Court finds the Magistrate Judge correctly applied the law to the facts of the case and overrules Petitioner's objections as to ground one. Ground one is due to be dismissed.

### C.    Ground Two

In ground two, Petitioner claims the Supreme Court of South Carolina violated both the due process and equal protection clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States by exercising its discretion in an arbitrary and capricious manner on ground one above by granting relief to other death-sentenced inmates while denying certiorari and relief to Petitioner when he presented the same issue with nearly identical facts and is therefore similarly situated.

The Magistrate Judge rejected ground two finding that Petitioner's challenge to the South Carolina Supreme Court's decision not to review a collateral claim of ineffective assistance of counsel was a procedural error that was not cognizable on federal habeas review. *See Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) ("[C]laims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal *habeas corpus* relief"); *see also Wright v. Angelone*, 151 F.3d 151, 159 (4th Cir. 1998) ("[Petitioner] is not currently detained as a result of a decision of the [state supreme court] in the state habeas action. Accordingly, we agree with the district court that this claim, a challenge to . . . state habeas proceedings, cannot provide a basis for federal habeas relief").

Petitioner does not make a specific objection to the Magistrate Judge's recommendation as to ground two. Petitioner merely states: "[t]he South Carolina Supreme Court's decision not to grant certiorari on [ground one] resulted in a decision contrary to federal law as determined by the United States Supreme Court or reached an unreasonable determination of the facts on the evidence

presented, particularly where the South Carolina Supreme Court has declared that each case involving 'prison conditions' should be decided on a case-by-case (and fact-by-fact) basis." [Objections to R&R, ECF No. 229 at 4]. Petitioner's objection does not address the Magistrate Judge's recommendation regarding whether ground two is a cognizable claim.

A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2254(a). Here, Petitioner is not in custody as a result of the South Carolina Supreme Court's decision not to grant certiorari as to ground one. Petitioner's claim in ground two is therefore not cognizable. *See Wright*, 151 F.3d at 159. Moreover, this Court's reading of *Bowman*, 809 S.E.2d 232, indicates that had the South Carolina Supreme Court granted certiorari on ground one, it would have denied relief just as it did in *Bowman*. 809 S.E.2d at 239-246 (rejecting petitioner's argument that defense counsel was deficient in failing to object to the Solicitor's questioning of defense prison expert Aiken regarding general prison conditions).

Petitioner's objection with respect to ground two is overruled. The Magistrate Judge correctly applied the law to the facts and correctly concluded that Petitioner's claim in ground two was not cognizable on federal habeas review. Ground two is due to be dismissed.

### D.    Ground Three

In ground three, Petitioner claims trial counsel rendered ineffective assistance of counsel under *Strickland* by failing to object to the portion of the solicitor's closing argument where the solicitor gave his personal opinion that death was the appropriate punishment and made improper

"send a message" arguments.[6]

### (1)    Facts

During his closing argument, the solicitor stated:

> Now, when we asked for the death penalty, it's a fair and
> appropriate question for you to say back to me, Solicitor Ariail,
> why do you think that the death penalty is an appropriate
> punishment in this case?  And I can best summarize it by a
> response that I got from a juror in another case on voir dire, and
> that juror said, as to her response in her argument for the death
> penalty, that they're [sic] are mean and evil people who live in this
> world, who do not deserve to continue to live with the rest of us,
> regardless of how confined they are.  And that's what the basis of
> our request for the death penalty is.  There are certain mean and
> evil people that live in this world that do not deserve to continue to
> live with us.
>
> . . .
>
> And there are people, there are people who will argue that the
> death penalty is not a deterrent.  But my response as the solicitor of
> this circuit is, it is a deterrent to this individual and that is what we
> are asking, is to deter Brad Sigmon and send the message that this
> type of conduct will not be tolerated in Greenville County, or
> anywhere in this State.  And let that decision that you reach ring
> like a bell from this courthouse, that people will understand that we
> will not accept brutal behavior such as this.  Thank you.

[App. 2064-64; 2070].  Trial counsel did not object.

### (2)    South Carolina Supreme Court Opinion

The South Carolina Supreme Court found that the solicitor's comments were not improper

---

[6]       PCR counsel did not specifically raise an ineffective assistance of counsel claim regarding the solicitor's "send a message" comments.  The precise issue raised in the PCR litigation centered on trial counsel's failure to object to comments suggesting the solicitor's personal opinion and involvement in the process, not a freestanding challenge to the "send a message" argument.  Thus, the "send a message" argument was not addressed separately in the PCR court Order of Dismissal or the Supreme Court of South Carolina Opinion.  Accordingly, the Court finds Petitioner's claim that trial counsel were ineffective for failing to object to the solicitor's "send a message" argument is procedurally defaulted and Petitioner has failed to establish cause and prejudice for the default.  Regardless, even if not procedurally defaulted, the claim fails on the merits as discussed below.

and therefore trial counsel were not deficient for not objecting. *Sigmon v. State*, 742 S.E.2d 394, 400 (S.C. 2013). The court held the solicitor's comments did not diminish the role of the jury in sentencing Petitioner to death and the solicitor did not go so far as to compare his undertaking in requesting the death penalty to the jury's decision to ultimately impose a death sentence. *Sigmon*, 742 S.E.2d at 399.

### (3) R & R

The Magistrate Judge recommended granting summary judgment and dismissing ground three. As to the solicitor's argument regarding his reasons for seeking the death penalty, the Magistrate Judge found that, based on the solicitor's closing argument as a whole, the state court could have reasonably determined that the solicitor's comments did not improperly mislead the jury about its role in determining Petitioner's sentence. With respect to the "send a message" argument, the Magistrate Judge noted that Petitioner's trial counsel responded to those portions of the solicitor's closing argument in his own closing argument. Thus, the Magistrate Judge concluded that although trial counsel may not have expressed a strategic reason for not objecting to the specific portions of the solicitor's closing at issue in ground three, trial counsel's actions appear to comport with the stated general strategy of responding, rather than objecting, to opposing counsel's closing argument. In concluding that the state court's decision was neither contrary to nor an unreasonable application of applicable Supreme Court precedent, nor based on an unreasonable determination of the facts, the Magistrate Judge found the record supported the state court's determination that trial counsel were not ineffective for not objecting to the solicitor's closing argument during the penalty phase of Petitioner's trial.

### (4) Discussion

Petitioner objected to the Magistrate Judge's recommended dismissal of ground three arguing that by offering his personal opinions that he had decided the death penalty was the right sentence, the jury was left with the impression that their decision was far less important than it should have been. Petitioner also argues the solicitor's request to "send a message" injected an arbitrary and capricious factor into the imposition of death, which the Eighth Amendment prohibits. Petitioner argues that in failing to grant relief on this ground, the state court's decision was contrary to clearly established federal law as determined by the Supreme Court.

A prosecutor's improper remarks violate the Constitution only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Similarly, the South Carolina Supreme Court has held that the relevant question in determining whether a solicitor's closing arguments were improper is "whether the solicitor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Sigmon*, 742 S.E.2d at 399 (quoting *Simmons v. State*, 503 S.E.2d 164, 166-67 (S.C. 1998).

In this case, the solicitor's comments referencing his decision to seek the death penalty and that the jury should "send a message" with their verdict were borderline, but not necessarily improper. Fairminded jurists could disagree regarding whether the solicitor's comments were objectionable. *See Richter*, 562 U.S. at 101. Petitioner cites *United States v. Runyon*, 707 F.3d 475, (4th Cir. 2013), in support of his position the comments in the closing argument were improper, but Petitioner fails to distinguish between a direct challenge of the propriety of the comments and a claim of ineffective assistance of counsel. Affording the state court the required deference under AEDPA, Petitioner has not established that the state court's decision was contrary to, or an

unreasonable application of, clearly established federal law, nor has he demonstrated that the state court's decision was based on an unreasonable determination of the facts.

Assuming the solicitor's comments were objectionable and trial counsel was deficient for failing to object, Petitioner has failed to demonstrate prejudice as a result of trial counsel's failure to object. As the PCR court noted, the solicitor's comments "are so minor in comparison with the tremendous amount of evidence in aggravation," that any such error could not reasonably be said to have affected sentencing. [App. 2878].

The Magistrate Judge correctly applied the law to the facts with respect to ground three. Petitioner's objections as to ground three are overruled and ground three is due to be dismissed.

### E.    Ground Four

In ground four, Petitioner argues trial counsel was ineffective under *Strickland* for failing to request a charge on the mitigating circumstance of age or mentality based on evidence that Petitioner could have been intoxicated at the time of the crime.

#### (1)    Facts

Petitioner contends there is "extensive and credible evidence in the record" that Petitioner was intoxicated at the time of the crime. Charles Hall, one of Petitioner's employees, testified that Petitioner came to work two days before the murders and stated he had been drinking since 8:00 a.m. [App. 1616]. Hall also testified that around 8:00 or 8:30 the night before the murders, Petitioner came to Hall's house and asked if Hall knew where he could buy a gun. [App. 1613]. Hall testified that he could tell Petitioner had been drinking, but he seemed coherent. [App. 1614].

Around 9:00 p.m. the night before the murders, Petitioner and Eugene Strube bought beer at a gas station and went to Petitioner's trailer. [App. 1578-80]. Strube testified that Petitioner drank a

six-pack of beer and smoked "a couple hundred dollars worth" of crack. [App. 1593-94]. Strube testified that by the time they left the trailer the next morning before the murders, neither of them was under the influence of crack. [App. 1587].

Additionally, Dr. Alex Morton testified that based on what Petitioner consumed the day and night before the murders, drugs and alcohol could have impacted Petitioner's mental and psychological functioning for up to twenty-eight days after using them. [App. 1981]. According to Dr. Morton, Petitioner reported using about fifty dollars worth of crack cocaine and drinking two mixed drinks and half a bottle of peppermint schnapps the day and night before the murders. [App. 1980-81].

### (2)     South Carolina Supreme Court Opinion

The South Carolina Supreme Court rejected Petitioner's claim and found that "[a]lthough the record supports the conclusion Sigmon ingested alcohol prior to the murders, it does not establish he was intoxicated when he committed the crimes." *Sigmon*, 742 S.E.2d at 401. The court therefore concluded Petitioner's trial counsel were not deficient for failing to argue that Petitioner's intoxication warranted the mitigating charge of age or mentality. *Id*.

### (3)     R & R

The Magistrate Judge recommended granting summary judgment on ground four. Importantly, the Magistrate Judge noted that Petitioner had not indicated, and the Court had not found, any evidence that Petitioner was intoxicated at the time of the crime. [R&R, ECF No. 223 at 54]. The Magistrate Judge concluded that Petitioner failed to show by clear and convincing evidence that the state court's determination was incorrect, based on an unreasonable determination of the facts, or that it was contrary to, or an unreasonable application of, clearly established federal

21

law.

####     (4)     Discussion

Petitioner argues in his objections that ample evidence existed to support the assertion of intoxication. Petitioner contends the state court's finding on this ground was an unreasonable application of precedent to the facts, as well as an unreasonable determination of the facts.

Under South Carolina law, where there is evidence that the defendant was intoxicated at the time he committed the crime, the trial judge is required to submit the following statutory mitigating circumstances: "(2) [t]he murder was committed while the defendant was under the influence of mental or emotional disturbance;" "(6) [t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired;" and "(7) [t]he age or mentality of the defendant at the time of the crime." S.C. Code Ann. §§ 16-3-20(C)(b)(2), (6), (7); *State v. Vazsquez*, 613 S.E.2d 359, 363 (S.C. 2005).

During the penalty phase, trial counsel requested a jury charge pursuant to S.C. Code Ann. § 16-3-20(C)(b)(7) on the "age or mentality of the defendant at the time of the crime" based on the evidence presented as to Sigmon's mental state at the time of the murders. The court declined to charge "age or mentality" concluding any inference from mental state was covered by the court's other charges on mental state. Trial counsel did not argue that a charge on "age or mentality" was warranted based on Petitioner's alleged intoxication at the time of the murders.

The court did, however, charge the following statutory mitigating circumstances under S.C. Code Ann. § 16-3-20(C)(b): (1) "[t]he defendant has no significant history of prior criminal conviction involving the use of violence against another person;" (2) "[t]he murder was committed while defendant was under the influence of mental or emotional disturbance; (6) "[t]he capacity of

the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired;" and (8) "[t]he defendant was provoked by the victim into committing murder."

Petitioner argues there is ample evidence of intoxication at the time of the crime. While the record supports the conclusion that Petitioner abused drugs and alcohol the night before the murders and possibly into the early morning, the record does not establish that Petitioner was intoxicated when he left his trailer the morning of the murders before going to the Larkes' trailer. Strube testified that he and Petitioner ran out of crack sometime during the night and that neither were under the influence of crack by the time they left the trailer the morning of the murders. There is also no indication that Petitioner was still drunk based on the amount of alcohol he reportedly consumed. Petitioner has failed to meet his burden of rebutting the state court's factual determination that Petitioner was not intoxicated at the time of the murders.

Because the record supports the state court's conclusion that Petitioner was not intoxicated at the time of the murders, Petitioner's trial counsel were not deficient in failing to argue that Petitioner's alleged intoxication warranted an "age or mentality" jury charge under S.C. Code Ann. § 16-3-20(C)(b)(7).

Even if it was somehow error for trial counsel not to press the issue of an "age or mentality" instruction, Petitioner has failed to demonstrate any prejudice. The trial court's charges - that (2) "[t]he murder was committed while defendant was under the influence of mental or emotional disturbance; (6) "[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired" - adequately informed the jury that they could consider Petitioner's impaired mental state. Petitioner has failed to

demonstrate how an additional charge on "age or mentality" would have changed the results of the proceeding.

The state court's rejection of ground four was not contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented. The Magistrate Judge correctly applied the law to the facts in recommending summary judgment on ground four. Petitioner's objections are overruled and ground four is due to be dismissed.

**F.     Ground Five**

In ground five, Petitioner argues his trial counsel were ineffective under *Strickland* for failing to object to the trial court's instructions on non-statutory mitigating circumstances, which Petitioner contends impugned the legitimacy of non-statutory mitigating factors and suggested that the jury should consider only mitigating factors directly related to the offense.

**(1)     Facts**

Petitioner contends the following portions of the trial court's penalty phase jury instruction warranted an objection:

> Now, a mitigating circumstance is neither a justification or an excuse for the murder. It's [sic] simply lessens the degree of one's guilt. That is it makes the defendant less blameworthy, or less culpable.
> . . .
>
> So what is a non-statutory mitigating circumstance? A non-statutory mitigating circumstance is one that is not provided for by statute, but it is one which the defendant claims serves the same purpose. That is to reduce the degree of his guilt in the offense.

[App. 2108-09].

**(2)     South Carolina Supreme Court Opinion**

24

The South Carolina Supreme Court rejected Petitioner's claim that trial counsel was ineffective for failing to object to the trial court's jury instruction on non-statutory mitigating circumstances. The Supreme Court found the trial court's overall charge to the jury clearly indicated the jury's power to consider any circumstance in mitigation, and a reasonable juror would have known he could consider *any* reason in deciding whether to sentence Petitioner to death. *Sigmon*, 742 S.E.2d at 401-02.

### (3)    R & R

In recommending summary judgment, the Magistrate Judge concluded the South Carolina Supreme Court's decision was fully supported by the record. The Magistrate Judge closely examined the trial court's entire jury charge and found that the trial court's charge clearly indicated that non-statutory mitigating circumstances were to be weighted equally with statutory mitigating circumstances and that the jurors may choose a sentence of life imprisonment for any reason.

### (4)    Discussion

In his objections, Petitioner argues the wording of the judge's jury instructions suggested the non-statutory mitigating circumstances were things the defendant "claimed" served the same purpose as statutory mitigating circumstances and that the judge's instructions clearly drew a bright line between statutory and non-statutory mitigating circumstances. However, Petitioner's argument is incorrectly premised on the notion that the challenged portion of the jury charge can be read in isolation.

It is well established that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973); *State v. Hicks*, 499 S.E.2d 209, 215 (S.C. 1998) (stating "[a] jury instruction must be

viewed in the context of the overall charge"). In this case, the trial court's overall charge weighted statutory mitigating circumstances and non-statutory mitigating circumstances equally. *See* [App. 2107-2111]. The trial court's charge does not impugn or disparage non-statutory mitigating circumstances. The trial court instructed the jury that it could consider any factor in mitigation of the offense and it could impose a sentence of life imprisonment for no reason at all. [App. 2111]. When viewed in the context of the overall charge, Petitioner has failed to demonstrate that the trial court's non-statutory mitigating circumstance charge was improper or that trial counsel was deficient for failing to object to it. Even if trial counsel were deficient for failing to object to challenged portions of the trial court's charge, Petitioner has not established any resulting prejudice.

For those reasons, the state court's decision on ground five was not contrary to, or an unreasonable application of, clearly established federal law, nor an unreasonable determination of the facts. Respondents are entitled to summary judgment on ground five as recommended by the Magistrate Judge. Petitioner's objections are overruled and ground five is due to be dismissed.

## G.    Ground Six

In ground six, Petitioner argues trial counsel were ineffective under *Strickland* for requesting and obtaining a statutory mitigating circumstance charge related to provocation by the victim. While the trial court agreed to give the instruction based on Mr. Larke's statement he was going to get his gun, Petitioner contends that trial counsel misunderstood the basis for the instruction and pursued a patently offensive argument that Rebecca provoked Petitioner into murdering her parents.

### (1)    Facts

During the penalty phase of Petitioner's trial, trial counsel pursued a theory that Petitioner's actions were provoked by his volatile relationship with the Larkes' daughter, Rebecca Barbare.

26

Trial counsel called two of Ms. Barbare's ex-husbands and her current husband in an attempt to show that Ms. Barbare had a pattern of beginning a relationship with one man before ending a relationship with another. [App. 1825-28; 1907-18].

Trial counsel requested a statutory mitigating circumstances charge that the defendant was provoked by the victim in committing the murder. *See* S.C. Code Ann. § 16-3-20(C)(b)(8). The trial court agreed to charge that the defendant was provoked by the victim based on evidence that Mr. Larke said he was going to get his gun. [App. 2053-54].

Trial counsel also argued for a statutory mitigating charge that the defendant acted under duress or under domination of another person, specifically Rebecca Barbare. [App. 2052-53]. The trial court declined to give a "duress" instruction but informed trial counsel they could argue it as a mitigating circumstance. [App. 2053].

### (2)    PCR Order

The PCR court addressed this claim on the merits and found that trial counsel was not ineffective for developing a "trigger" or "love sick" theory and presenting such evidence as mitigation. [App. 2889]. The PCR court also found no prejudice from this strategy based on the "wealth of evidence in aggravation." *Id*. The PCR court further concluded that trial counsel were not ineffective for requesting and obtaining an instruction on the statutory mitigating circumstance of provocation by the victim. [App. 2890-92]. The PCR court set forth three reasons for finding no prejudice with respect to trial counsel's request for the "provocation by the victim" charge: 1) there is a factually distinguishable basis for the charge that is not challenged; 2) the fact of [Petitioner's] obsessive infatuation with Ms. Barbare was part and parcel of the case and would be addressed within trial, by [Petitioner's] confession alone if nothing else; and 3) the tremendous amount of

27

evidence in aggravation in the double murder of Ms. Barbare's parents in their own home. [App. 2892].

### (3)   R & R

The Magistrate Judge recommended granting summary judgment and dismissing ground six. The Magistrate Judge found there was a reasonable argument that trial counsel satisfied *Strickland*'s deferential standard when they pursued the "trigger" or "love sick" theory. *See Richter*, 562 U.S. at 105. Significantly, the Magistrate Judge noted that Petitioner failed to challenge the PCR court's finding that he suffered no prejudice from the jury charge or trial counsel's pursuit of the "trigger" or "love sick" theory. Based on Petitioner's failure to challenge the PCR court's prejudice findings on ground six, the Magistrate Judge found no reason to conclude the PCR court's prejudice analysis was based on an unreasonable determination of the facts or was an unreasonable application of *Strickland*. Accordingly, the Magistrate Judge found that Petitioner was not entitled to habeas relief on ground six.

### (4)   Discussion

In his objections, Petitioner argues trial counsel misunderstood the factual basis for the provocation by victim charge, which led to an offensive argument to the jury, specifically that Ms. Barbare caused her parents' death. Petitioner, however, has failed to establish that the PCR court's decision was contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts.

Trial counsel are granted wide latitude in making tactical decisions and reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. In this case, Petitioner has failed to establish

28

that trial counsel's pursuit of the "trigger" or "love sick" theory was objectively unreasonable. While the "trigger" or "love sick" theory was not successful, it was nevertheless consistent with Petitioner's Tennessee confession [App. 1507-1528] and statement to the jury ("Was I obsessed with her? Yes . . . What set me off? Go back three years. The second time Becky left Troy for me.") [App. 2085]. It was objectively reasonable for trial counsel to attempt to explain that Petitioner's actions were the result of passion or stress from the relationship with Ms. Barbare. Granting trial counsel wide latitude in making strategic decisions, the Court finds that trial counsel were not ineffective in pursuing the "trigger" or "love sick" theory. Furthermore, even if trial counsel were ineffective for pursuing this theory, Petitioner has not indicated how he suffered prejudice in light of the overwhelming evidence in aggravation.

As to the request for a charge of provocation by the victim and the assertion that trial counsel misunderstood the factual basis for the charge, Petitioner has failed to establish any error or resulting prejudice. The trial court indicated the factual basis for the charge on the record and trial counsel appeared to agree.

> The court:     All right. I'm going to scratch number five.
> Defendant was provoked by the victim in
> committing the murder, I'll leave. I find there is
> sufficient evidence in the record. And the reason is
> the action of Mr. Larke saying he was going to get
> his gun, that would be a mitigating factor as
> opposed to - - you know, that might have been an
> impulse to have him do something, so I would leave
> that. I assume you want that left in?
>
> Mr. Eppes: Yes, sir, Your Honor.

[App. 2053-54].

There was a factual basis for the charge and it appears that trial counsel understood the basis

for the charge. However, the Court does acknowledge that trial counsel gave somewhat confusing deposition testimony in the PCR case that could be read to indicate that trial counsel believed the basis for the provocation by victim charge was related to Ms. Barbare's actions with regard to her relationship with Petitioner. [App. 2700-01]. To the extent trial counsel misunderstood the basis for the charge and to the extent that resulted in arguing that Ms. Barbare's actions "triggered" or provoked Petitioner, the pursuit of that theory was neither objectively unreasonable or patently offensive. Again, even if there was error, Petitioner has failed to establish, or even address in his objections, any prejudice resulting from the provocation by victim jury charge or trial counsel's theory that Petitioner was triggered or provoked to commit the murders by his relationship with Ms. Barbare.

The PCR court's rejection of Petitioner's claims in ground six was not contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence presented. The Magistrate Judge correctly recommended granting summary judgment in favor of the Respondents on ground six. Petitioner's objections are overruled and ground six is due to be dismissed.

## II.    Procedurally Barred/Non-exhausted *Martinez* Claims

### A.    Standard of Review

Petitioner did not raise grounds seven through ten in state court. Respondents argue that, as a result of Petitioner's failure to raise grounds seven through ten in state court, Petitioner has procedurally defaulted those claims. It is Petitioner's burden to raise cause and prejudice or actual innocence in order to excuse the procedural default of claims seven through ten. *Kornahrens v. Evatt*, 66 F.3d 1350, 1362–63 (4th Cir.1995). Here, Petitioner argues the cause for the procedural

default is ineffective assistance of PCR counsel under *Martinez*.

"*Martinez* provides a narrow exception to the general rule, stated in *Coleman v. Thompson*, 501 U.S. 722, 752–53 (1991), that errors committed by state habeas counsel do not provide cause to excuse a procedural default." *Gray v. Zook*, 806 F.3d 783, 788 (4th Cir. 2015). The *Martinez* Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

566 U.S. at 17 (emphasis added).[7] Thus, "when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim" if "appointed counsel in the initial-review collateral proceeding[—]where the claim should have been raised[—]was ineffective under the standards of *Strickland*[.]" *Id.* at 14; *see also Gray v. Zook*, 806 F.3d 783, 789 (4th Cir. 2015) ("[A] *Martinez* claim requires a showing that state habeas counsel was ineffective."). "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel

---

[7] "*Martinez* did not purport to displace *Coleman* as the general rule governing procedural default. Rather, it 'qualifie[d] *Coleman* by recognizing a narrow exception' that applies only to claims of 'ineffective assistance of counsel at trial' and only when, 'under state law,' those claims 'must be raised in an initial-review collateral proceeding.'" *Davila v. Davis*, 137 S. Ct. 2058, 2065–66 (2017) (quoting *Martinez*, 566 U.S. at 9, 17). "This limited qualification of the *Coleman* rule was based on the fact that when an 'initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim.'" *Fowler v. Joyner*, 753 F.3d 446, 460 (4th Cir. 2014) (quoting *Martinez*, 566 U.S. at 11). "[F]or states like [South Carolina]—where a petitioner can only raise an ineffective assistance claim on collateral review— *Martinez* announced that federal habeas counsel can investigate and pursue the ineffectiveness of state habeas counsel in an effort to overcome the default of procedurally barred ineffective-assistance-of-trial-counsel claims." *Juniper v. Davis*, 737 F.3d 288, 289 (4th Cir. 2013).

claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 566 U.S. at 14.

> To summarize, then, *Martinez* held that a federal habeas petitioner who seeks to raise an otherwise procedurally defaulted claim of ineffective-assistance-of-trial-counsel before the federal court may do so only if: (1) the ineffective-assistance-of-trial-counsel claim is a substantial one; (2) the "cause" for default "consist[s] of there being no counsel or only ineffective counsel during the state collateral review proceeding"; (3) "the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim"; and (4) state law "requires that an ineffective-assistance-of-trial-counsel claim be raised in an initial-review collateral proceeding."

*Fowler v. Joyner*, 753 F.3d 446, 461 (4th Cir. 2014) (internal quotation marks and alteration in original) (quoting *Trevino v. Thaler*, 569 U.S. 413, 423 (2013)).

In short, "[t]o invoke *Martinez*, [a petitioner] must demonstrate that state habeas counsel was ineffective or absent, and that the underlying [ineffective-assistance-of-trial counsel] claim is substantial." *Porter v. Zook*, __ F.3d __, __, 2018 WL 3679610, at *21 (4th Cir. Aug. 3, 2018). Significantly, "because a petitioner raising a *Martinez* claim never presented the claim in state court, a federal court considers it de novo, rather than under AEDPA's deferential standard of review." *Gray*, 806 F.3d at 789.

### B.    Ground Seven

In ground seven, Petitioner asserts that trial counsel were ineffective for failing to investigate and present available mitigating evidence.  Specifically, Petitioner argues counsel should have presented evidence of Petitioner's 1) positive adjustment to prison; 2) good character; 3) cruel and repeated physical abuse during childhood; 4) history of and treatment for depression; and 5)

remorse. Ground seven was not raised in state court.  Petitioner, nevertheless, argues ground seven

is not procedurally defaulted pursuant to *Martinez* because the underlying claim is substantial and

PCR counsel was ineffective for failing to raise it in the state collateral review proceeding.

### (1)     Facts

Trial counsel retained a mitigation investigator to look into potential mitigating evidence.

Trial counsel also consulted with three mental health professionals - Dr. Alex Morton, Dr. Ernest C.

Martin, and Dr. Donna Schwartz-Watts.  Additionally, trial counsel consulted with a prison

adaptability expert and a clinical social worker.  The social worker interviewed Petitioner three

times and interviewed several of his family members including Petitioner's mother, father, sisters,

brother, two step-siblings, and aunt.

The mitigation evidence at trial was fairly substantial consisting of 14 witnesses.  Trial

counsel presented three experts, five Greenville County Detention Center employees, five family

members, and one religious volunteer.

Dr. Morton testified about Petitioner's mental health and addictions and testified that

Petitioner: 1) suffered from recurrent major depressive disorder; 2) suffered from chemical

dependency disorders, specifically regarding cocaine, alcohol, and marijuana; and 3) was using a

number of substances to treat his depression. [App. 1975-76].

The clinical social worker, Shirley Furtick, testified regarding Petitioner's family history and

background.  Ms. Furtick testified that Petitioner's father abused alcohol and that Petitioner suffered

emotional neglect during his childhood. [App. 1871-82].  Ms. Furtick testified that the emotional

neglect Petitioner suffered in his childhood resulted in developmental losses and led to his

depression, anxiety, and inability to establish and maintain healthy relationships. [App. 1882].  Ms.

Furtick testified that children who experience neglect generally tend to be over-reactive and overly involved or attached to relationships. [App. 1882].

James Aiken testified regarding Petitioner's prison adaptability and stated that Petitioner could be incarcerated in a prison setting for the remainder of his life without causing an undue risk of harm to staff, inmates, or the general community. [App. 2017-21]. Trial counsel presented the testimony of five Greenville County Detention Center employees, which supported Aiken's conclusion on Petitioner's prison adaptability.

Trial counsel also presented testimony of Terry Bradley, a religious volunteer at the detention center who led a weekly Bible class. [App. 1921-32]. The rest of the mitigation witnesses were members of Petitioner's family.

Petitioner contends trial counsel should have introduced additional mitigation evidence in the categories of: 1) positive adjustment to prison; 2) good character; 3) cruel and repeated physical abuse during childhood; 4) Petitioner's history of depression; and 5) remorse. Petitioner submitted affidavits to support his additional mitigation evidence. [ECF Nos. 117-3 - 117-16].

Petitioner states that his father, brother, and Pastor Don McKellar could have testified about his positive adjustment to prison. Petitioner contends that Ms. Barbare's son, Troy Barbare, Jr., could have presented additional positive character evidence that Petitioner treated Troy like a son. Petitioner contends that his mother could have presented testimony that Petitioner's father would push or hit Petitioner during Petitioner's childhood. Petitioner also contends that trial counsel should have called the Greenville County Detention Center staff psychiatrist, Dr. Martin, to testify about Petitioner's history of depression, as well as his anxiety. Finally, Petitioner argues that trial counsel should have presented or introduced additional evidence of Petitioner's remorse.

### (2)    R & R

The Magistrate Judge found that ground seven was not a substantial claim under *Martinez*. The Magistrate Judge noted that the information offered in support of the additional mitigation evidence was cumulative of the information presented at trial, with the exception of Petitioner's mother's report of physical abuse in Petitioner's childhood.  Finding that trial counsel were not ineffective, the Magistrate Judge stated "this is not a case in which the defendant's attorneys failed to act while potentially powerful mitigating evidence stared them in the face or would have been apparent from documents any reasonable attorney would have obtained.  It is instead a case in which defense counsel's decision not to seek more mitigating evidence from the defendant's background than was already in hand fell well within the range of professionally reasonable judgments." [ECF No. 223 at 85].  The Magistrate Judge also found that Petitioner suffered no prejudice from trial counsel's failure to present the additional mitigating evidence.  "[G]iven its cumulative nature, the additional evidence Petitioner offers "would barely have altered the sentencing profile presented to the jury . . . and would have done little to counter the weight of the aggravating evidence of Petitioner's gruesome beating of an elderly couple he knew well in their own home and his attempt to flee." [ECF No. 223 at 95].  Accordingly, the Magistrate Judge found that Petitioner's underlying claim of ineffective assistance of counsel was insubstantial and that Petitioner failed to show cause and prejudice under *Martinez*.  The Magistrate Judge recommended that ground seven remain defaulted and subject to summary judgment.

### (3)    Discussion

In his objections, Petitioner does not address the cumulative nature of the additional evidence he claims should have been presented.  Rather, Petitioner argues in general terms that there

was evidence that could have changed the outcome of this case the jury never heard. Petitioner's objections focus on the proposed testimony of Troy Barbare, Jr. (Ms. Barbare's son) and Dr. Ernest Martin (Greenville County Detention Center staff psychiatrist).

Trial counsel are not required to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing. *Wiggins v. Smith*, 539 U.S. 510, 533 (2003). There comes a point at which more evidence can reasonably be expected to be only cumulative, and the search for it distractive from more important duties. *Bobby v. Van Hook*, 558 U.S. 4, 11 (2009). As the Magistrate Judge noted, this is not a case where trial counsel failed to act while potentially powerful mitigating evidence stared them in the face. Rather, this is a case in which trial counsel's decision not to seek more mitigating evidence falls well within the range of professionally reasonable judgments.

Petitioner contends trial counsel should have introduced additional mitigation evidence in the categories of: 1) positive adjustment to prison; 2) good character; 3) cruel and repeated physical abuse during childhood; 4) Petitioner's history of depression; and 5) remorse.

Positive Adjustment to Prison

Petitioner's father, Ronnie Sigmon, who was a correctional officer with the S.C. Department of Corrections, would have testified that, based on his experience as a correctional officer, Petitioner would obey correctional officers and staff and would not be a future danger or threat to any correctional officer or staff. [Ronnie Sigmon Aff., ECF No. 117-15].

Petitioner's brother, Mike Sigmon, stated in his affidavit that he visited Petitioner a lot while Petitioner was at the Greenville County Detention Center. Regarding prison adaptability, Mike stated that he would have testified that Petitioner was always very respectful of the correctional

36

officers and staff and that he did not appear to be a problem inmate at all. [Mike Sigmon Aff., ECF No. 117-13].

Pastor Don McKellar is the retired pastor of Petitioner's mother and step-father's church. Mr. McKellar indicates in his affidavit that "[b]ased on his experience both as a minister and with the prison system programs, I can state Brad Sigmon would have been one of the good and well-behaved inmates and he would try to help others in prison." [Don McKellar Aff., ECF No. 117-10].

<u>Good Character Evidence</u>

Petitioner contends trial counsel should have presented additional positive character evidence. Petitioner submitted the affidavit of Troy Barbare, Jr., Ms. Barbare's son, who was twelve years old at the time of the murders. [Troy Barbare, Jr. Aff., ECF No. 117-4]. Troy stated that Petitioner treated him like a son, even though he was not his actual father. *Id.* Troy further stated that he would have testified that he thought of Petitioner like a father. *Id.* If called to testify, Troy would have stated that he never saw Petitioner mistreat Ms. Barbare in any way or physically assault her or commit or attempt to commit any act of domestic violence against her. *Id.*

Petitioner also contends that Pastor McKellar would have offered positive character evidence. Pastor McKellar stated in his affidavit that Petitioner appeared to be a good natured person, hard-worker, and of good moral character. [ECF No. 117-10].

Petitioner also submits the affidavits of Louis Burrell, Virginia Wooten, and Mike Sigmon to show that they would have testified that when Petitioner was about 15 years old, he went to work virtually full time while also staying in school to help support his mother and the family. [Louis Burrell Aff., ECF No. 117-5; Virginia Wooten Aff., ECF No. 117-16; Mike Sigmon Aff., ECF No. 117-13].

Physical Abuse

Petitioner's mother, Virginia Wooten, stated in her affidavit that Petitioner's father would physically abuse her after drinking alcohol and that Petitioner would often get in the middle of the physical altercation and try to protect her. [Virginia Wooten Aff., ECF No. 117-16]. Ms. Wooten stated that her husband would knock Petitioner out of the way, or shove, or slap him. *Id*. Ms. Wooten stated that when Petitioner was 15 years old, his father hit her multiple times in the face and when Petitioner tried to intervene his father punched him and knocked him down. *Id*. She stated that these altercations occurred numerous times. *Id*.

History of Depression

Dr. Ernest Martin (Greenville County Detention Center staff psychiatrist), if called to testify, would have testified regarding Petitioner's history of depression. [Ernest Martin Aff., ECF No. 117-9]. Dr. Martin stated that Petitioner entered the detention center with a previous diagnosis of Depression, which was being treated with Elavil (.75 milligrams). *Id*. On May 9, 2001, Dr. Martin diagnosed Petitioner with Depression recurrent, currently in remission. *Id*. On October 12, 2001, Dr. Martin examined Petitioner again and concluded that Petitioner was showing signs of situational anxiety. *Id*. On February 4, 2002, Dr. Martin saw Petitioner again and determined that Petitioner was suffering from mild Depression, in partial remission. *Id*. Dr. Martin stated that his diagnosis of Petitioner during the time he was incarcerated at the detention center was Major Depression, recurrent without Psychotic features in remission. *Id*.

Remorse

Pastor McKellar visited Petitioner in the Greenville County Detention Center after Petitioner was arrested. [Don McKellar Aff., ECF No. 117-10]. Pastor McKellar stated in his affidavit that

Petitioner was very remorseful and very sorry for the harm that he had caused to the Larke family, and to his own family. *Id*.

Petitioner contends that Dr. Martin's diagnosis of Major Depression is also evidence of remorse. [ECF No. 131 at 30]. Petitioner also raises counsel's failure to play for the jury a video and audio recording of a phone call between Petitioner and his mother after his arrest as evidence of remorse.

The additional mitigating evidence of positive adjustment to prison, good character, cruel and repeated physical abuse during childhood, Petitioner's history of depression, and remorse as set forth in the affidavits and outlined above is, for the most part, cumulative of the mitigation case trial counsel presented through its 14 mitigation witnesses. Trial counsel were not deficient in failing to investigate, discover, and/or introduce this additional mitigating evidence. The determination of what constitutes "enough" mitigation evidence is a strategic decision that falls within the wide range of reasonable professional assistance and should not be second guessed after the fact. It was objectively reasonable for trial counsel to "rest" with the mitigation case that was presented through Dr. Morton (mental health expert), Shirley Furtick (clinical social worker), James Aiken (prison adaptability expert), Matt Tally (Field Training Officer - Greenville County Detention Center), Julia Moore (Licensed Professional Counselor - Greenville County Detention Center), Rosa Jones (Nurse - Greenville County Detention Center), Valerie Putnam (Greenville County Detention Center), Captain Michelle Melton (Manager - Greenville County Detention Center), Terry Bradley (religious volunteer), Donnie Wooten (step-father), Robbie Sigmon (son), Brenda Clark (aunt), Ronnie Sigmon (father), and Virginia Wooten (mother).

However, even assuming trial counsel should have discovered and presented the additional

mitigating evidence set forth in the affidavits, Petitioner has failed to establish any resulting prejudice. To show prejudice, Petitioner must demonstrate a reasonable probability that at least one juror would have voted against the death penalty had the jury heard the additional available mitigating evidence. *See Strickland*, 466 U.S. at 695; *Wiggins*, 539 U.S. at 537. To answer this question, the Court must "reweigh the evidence in aggravation against the totality of available mitigating evidence." *Wiggins*, 539 U.S. at 534.

Petitioner has failed to show a reasonable likelihood that the additional evidence of prison adaptability, good character, physical abuse, depression, and remorse would have resulted in a life sentence, especially when the evidence is cumulative of what was already presented. *See Morva v. Zook*, 821 F.3d 517, 531 (4th Cir. 2016). The additional evidence of mitigation set forth in the affidavits is not particularly compelling and amounts to only minimal mitigation evidence at best. There is no reasonable probability that at least one juror would have changed his or her sentencing vote based on anything set forth in the affidavits. When the evidence in aggravation (torture, burglary, two murders committed during one course of conduct) is weighed against the totality of available mitigating evidence, there is no reasonable probability that at least one juror would have changed his or her sentencing vote.

Accordingly, Petitioner has failed to establish that his underlying ineffective assistance of counsel claim is substantial under *Martinez*. Because trial counsel were not ineffective for failing to investigate and present available mitigating evidence, and there was no resulting prejudice, PCR counsel were not ineffective for failing to raise ground seven in the PCR proceeding. The Court agrees with the Magistrate Judge that Petitioner has not established "cause" for the default of ground seven. The Court also agrees with the Magistrate Judge that Petitioner is not entitled to a *Martinez*

evidentiary hearing on ground seven because the claim is not substantial. Petitioner's objections as to ground seven are overruled. Ground seven remains defaulted and Respondents are entitled to summary judgment.

### C.    Ground Eight

In ground eight, Petitioner alleges he was denied effective assistance of counsel per the Sixth and Fourteenth Amendments, and per S.C. Code Ann. § 16-3-26(b)(1), because second chair counsel, Frank Eppes, impermissibly served as lead counsel, even though he lacked the requisite felony trial experience to serve as lead counsel. Ground eight was not raised in state court but Petitioner, nevertheless, argues the ground is not procedurally defaulted pursuant to *Martinez*.

John Abdalla, who was appointed "lead" counsel, stated in his affidavit that "Mr. Eppes was appointed as 'second chair'" and "Mr. Eppes insisted on acting as lead counsel." [John Abdalla Aff., ECF No. 117-3].

Frank Eppes, who was appointed "second chair" counsel, stated in his affidavit that he "took over as lead counsel." [Frank Eppes Aff., ECF No. 117-7]. Eppes states that he remembers saying to Mr. Abdalla that "you may be appointed as lead counsel by the court, but you will bend to my will." *Id*. Eppes states that Mr. Abdalla acceded to his request to act as lead counsel. *Id*.

The Magistrate Judge found that ground eight was not a substantial claim under *Martinez* and recommended granting summary judgment. In reaching this conclusion, the Magistrate Judge noted that there was no rule specifying which aspects of a capital case should fall to lead counsel and which responsibilities should fall to second chair counsel.

In his objections, Petitioner argues that Eppes did not have the requisite trial or felony experience to serve as lead counsel in a capital case, though he was qualified to serve as second

chair. Petitioner argues that South Carolina's qualifications statute and rule are a codification of the Sixth Amendment guarantee to effective counsel and there should be a presumption of ineffectiveness when the capital appointment statute is violated, which should result in a new trial for Petitioner.

Under S.C. Code Ann. § 16-3-26(B)(1),

> Whenever any person is charged with murder and the death penalty is sought, the court, upon determining that such person is unable financially to retain adequate legal counsel, shall appoint two attorneys to defend such person in the trial of the action. One of the attorneys so appointed shall have at least five years' experience as a licensed attorney and at least three years' experience in the actual trial of felony cases . . . .

Section 16-3-26(B) promulgates the "exclusive procedure for appointment of counsel for indigent defendants charged with capital murder." *State v. Brown*, 347 S.E.2d 882, 884 (S.C. 1986). Rule 421 of the South Carolina Appellate Court Rules provides:

> (a) Classes of Certified Attorneys. There shall be two classes of attorneys certified to handle death penalty cases: lead counsel and second counsel.
>
> (b) Lead Counsel. Lead counsel shall have at least five years experience as a licensed attorney and at least three years experience in the actual trial of felony cases. . . .
>
> (c) Second Counsel. Second counsel shall have at least three years experience as a licensed attorney. Second counsel is not required to be further certified to be eligible for appointment.

Rule 421, SCACR.

Petitioner offers no authority for the proposition that trial counsel are *per se* ineffective when second chair counsel assumes the role of lead counsel. Also, Petitioner offers no authority that

specifies which aspects of a capital case should fall to lead counsel and which responsibilities should fall to second chair counsel.

A review of the record indicates that Mr. Abdalla made the opening statement in the guilt phase and closing argument in the guilt phase. Mr. Eppes made the opening statement and closing argument in the penalty phase. In total, it appears Abdalla examined 19 witnesses, while Eppes examined 24. Abdalla examined the mental health expert, Dr. Morton, and the clinical social worker, Shirley Furtick. Eppes examined the prison adaptability expert, James Aiken. Abdalla had the most contact with Petitioner [App. 2595] and investigated Petitioner's personal history [App. 2647] and mental health [App. 2596–97]. Eppes, on the other hand, focused on the other evidence in the case, such as police reports. [App. 2647]. Abdalla questioned potential jurors [see, e.g., App. 282]; cross-examined State witnesses [e.g., App. 1269–70, 1280–82, 1285–87]; and examined defense witnesses in the penalty phase, including two of the three experts [App. 1849–1901, 1965–2002]. Abdalla and Eppes appear to have divided the workload fairly evenly. The trial transcript does not support the notion that Eppes acted as lead counsel or that he assumed a majority of the workload.

Petitioner has failed to show how S.C. Code Ann. § 16-3-26(B)(1) or Rule 421 of the Appellate Court Rules were violated when the court properly appointed Abdalla as lead counsel and Eppes as second chair. Again, there is no rule setting forth how duties should be divided between lead counsel and second chair counsel in a capital case.

Even if Eppes did assume the role of lead counsel, Petitioner has failed to establish error or that Eppes was ineffective under *Strickland*. As noted by the Magistrate Judge, a violation of a defendant's statutory right regarding counsel does not automatically equate to a constitutional

43

violation. *See United States v. Blankenship*, 548 F2d 1118, 1121 (4th Cir. 1976). Thus, Eppes's lack of felony trial experience does not automatically render his assistance ineffective under *Strickland*. Neither *Strickland* nor the Constitution specify the number of years or type of experience a capital defense attorney must have. Rather, "the proper standard for attorney performance is that of reasonably effective assistance." *Strickland*, 466 U.S. at 687. As discussed throughout this Order and the Magistrate Judge's R&R, Eppes and Abdalla both rendered effective assistance of counsel under *Strickland*. Petitioner has not shown that he was denied effective assistance of counsel simply because his second chair attorney acted as lead counsel while lacking the requisite felony trial experience to serve as lead counsel.

Petitioner relies on *United States v. Watson*, 496 F.2d 1125 (4th Cir. 1973), for the proposition that there is a presumption of ineffectiveness when the capital appointment statute is violated by the attorneys appointed. Petitioner, however, attempts to expand *Watson* far beyond its holding. *Watson* simply held that when a capital defendant requests two attorneys under 18 U.S.C. § 3005, § 3005 provides an absolute statutory right to additional counsel. 496 F.2d at 1129. In *Watson*, the court did not presume prejudice under *Strickland* as Petitioner implies. Instead, the court simply declined to apply a harmless error analysis where a capital defendant's request for two lawyers under 18 U.S.C. § 3005 was denied. *Id*. at 1130.

For the reasons stated above, Petitioner has failed to establish that ground eight is a substantial claim under *Martinez*. Because ground eight is not a substantial claim, PCR counsel was not ineffective for failing to raise it in the state court PCR proceeding. Petitioner has, therefore, not established "cause" for the default of ground eight. Also, because ground eight is not a substantial claim, Petitioner is not entitled to a *Martinez* evidentiary hearing. Petitioner's objections as to

ground eight are overruled.  Ground eight remains defaulted and Respondents are entitled to summary judgment.

### D.       Ground Nine

In ground nine, Petitioner argues that trial counsel was ineffective for failing to object to Petitioner wearing a stun belt that may have been visible to jurors.  This claim was not presented to the state court and is procedurally defaulted unless Petitioner can establish "cause" for the default under *Martinez*, i.e., that the underlying ineffective assistance of counsel claim is substantial, and that state habeas counsel was ineffective or absent.

The Magistrate Judge recommended summary judgment in favor of Respondents on ground nine.  The Magistrate Judge stated that Petitioner had failed to state a viable constitutional claim, let alone a substantial one.  As a result, Petitioner could not overcome the procedural default under *Martinez*.

In his objections on ground nine, Petitioner states the jury likely saw the stun belt and that no actual prejudice is required to show a violation of due process.  Petitioner relies on *Deck v. Missouri*, 544 U.S. 622 (2005), where the U.S. Supreme Court held that when the trial court, without adequate justification, orders a defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation; instead, the state must prove beyond a reasonable doubt that the shackling error did not contribute to the verdict obtained. *Deck*, 544 U.S. at 634.

Petitioner's reliance on *Deck* is misplaced insofar as *Deck* was a direct appeal issue and did not involve a claim of ineffective assistance of counsel.  Thus, while *Deck* may not require a defendant to demonstrate actual prejudice to make out a due process violation, Petitioner has not

alleged such a due process violation based on wearing a stun belt. Instead, Petitioner has asserted an ineffective assistance of counsel claim under *Strickland* based on the failure to object to the stun belt. The distinction is critical. Petitioner must establish prejudice to be entitled to relief on a *Strickland* claim of ineffective assistance of counsel. Furthermore, to overcome the procedural default of this ineffective assistance of counsel claim, Petitioner must show that the underlying claim of ineffective assistance of trial counsel is a substantial one and that Petitioner's state PCR counsel was ineffective in failing to raise it.

As noted by the Magistrate Judge, on this procedurally defaulted ineffective assistance of counsel claim, Petitioner must rebut a strong presumption that trial counsel performed reasonably and show that trial counsel's errors impacted the verdict in order to state a substantial claim. [R&R, ECF No. 223 at 101]. Where Petitioner only alleges that the jury "likely" saw the stun belt, and there is no evidence in the record that any member of the jury noticed the stun belt, he has failed to establish prejudice sufficient to establish a substantial claim under *Martinez*. *See United States v. McKissick*, 204 F.3d 1282, 1299 (10th Cir. 2000) ("However, there is no evidence in the record that any member of the jury noticed the stun belts. Thus, we do not presume prejudice . . . .").

There was overwhelming evidence supporting the death penalty and overwhelming evidence in aggravation of these murders, including torture, burglary, and two murders committed during the same course of conduct. On these facts, where there is no evidence in the record that any member of the jury noticed the stun belt, Petitioner has not shown a reasonable probability that, but for counsel's failure to object to the stun belt, the result of the proceedings would have been different, or that the proceedings would have resulted in a life sentence. Because there is no prejudice from trial counsel's failure to object to the stun belt, Petitioner has failed to establish that the underlying

46

ineffective assistance of counsel claim is a substantial one.

Petitioner has also failed to establish that trial counsel's failure to object to the stun belt was objectively unreasonable. "Omitting a motion directed to [a] stun belt is not the sort of inexplicable omission that renders even an apparently sturdy defense so deficient that the representation as a whole fell below an 'objective standard of reasonableness.'" *Bland v. Hardy*, 672 F.3d 445, 451 (7th Cir. 2012).

Because Petitioner has failed to establish that the underlying ineffective assistance of counsel claim based on the failure to object to the stun belt is a substantial one, PCR counsel was not ineffective for failing to raise it. As such, Petitioner has not established "cause" for the procedural default. The Court agrees with the Magistrate Judge that ground nine remains defaulted and Respondents are entitled to summary judgment. Petitioner is not entitled to a *Martinez* evidentiary hearing on this insubstantial claim.

### E.      Ground Ten

In ground ten, Petitioner asserts that trial counsel were ineffective because trial counsel were unaware that the second defense attorney could have also presented a closing argument at sentencing after the Petitioner. Petitioner contends that he suffered prejudice as a result because trial counsel were unable to remedy the damaging effects of Petitioner's closing argument and refocus the jury on the mitigating evidence.

This claim was not raised in state court. Thus, it is procedurally defaulted unless Petitioner can establish "cause" for the default under *Martinez*, i.e., that the underlying ineffective assistance of counsel claim is substantial, and that state habeas or PCR counsel was ineffective or absent.

In his affidavit, trial counsel Eppes states that "[a]t the time, I believed the law required

[Petitioner] to be the very last speaker at closing argument at sentencing." [Eppes Aff., ECF No. 117-7].  Eppes characterizes Petitioner's closing argument at sentencing as "just awful." *Id*. Abdalla stated that Petitioner's "closing argument did not go over well with the jury." [Abdalla Aff., ECF No. 117-3].  Both trial counsel stated in their affidavits that had they known they could offer a closing argument after Petitioner, then Abdalla would have made the final closing argument after Petitioner.

The Magistrate Judge found that evidence in the record supported the notion that trial counsel at least knew that they could offer a closing argument after Petitioner.

> THE COURT: . . . What is the order of argument?
>
> MR. ABDALLA: I believe we're not going to require them to open, if that's what you're asking? Unless there's something I don't know. It goes State, defense, then defendant is my understanding, am I incorrect on that?
> . . . .
>
> MR. EPPES: Well, I don't know -- I thought the statute did not specify whether the defendant spoke first or second.
>
> THE COURT: I don't know if it does or does not.
>
> MR. EPPES: We would plan to go State, defendant, defense
>
> THE COURT: Anything on that?
>
> MS. STROM: They're always entitled to the last argument.
> . . . .
>
> THE COURT: I understand that. I'm saying -- you know, defendant, defense?
>
> MS. STROM: That's not defined as far as which way it has to go.

48

[App. 1668–69.]

The Magistrate Judge found while trial counsel's decision to let Petitioner go last in the closing argument sequence may have been a poor one, it appears to have been made with full knowledge of the relevant law. More importantly though, the Magistrate Judge found that even if trial counsel were deficient, Petitioner had not shown prejudice. "Any possible mitigating effect of counsel addressing the jury after Petitioner and 're-focus[ing]' the jury on mitigating circumstances and counsel's argument for a life sentence cannot outweigh the aggravating evidence in this case." [R&R, ECF No. 223 at 105].

In his objections on ground ten, Petitioner argues that trial counsel's decision to allow Petitioner to make the last argument was neither a failed strategy nor a reasonable mistake; it was a decision based on a lack of understanding of the law. Petitioner maintains that trial counsel were ineffective under *Strickland* for failing to mitigate the harm caused by Petitioner's closing argument, "despite a legal right to effectively soften the damage from [Petitioner's] closing." [Petitioner's Objections to R&R, ECF No. 229 at 16].

S.C. Code Ann. § 16-3-28 provides: "[n]otwithstanding any other provision of law, in any criminal trial where the maximum penalty is death or in a separate sentencing proceeding following such trial, the defendant and his counsel shall have the right to make the last argument." While the trial transcript indicates that trial counsel at the guilt phase knew that the defense could offer a closing argument after Petitioner (Mr. Eppes stated "We would plan to go State, defendant, defense"), the transcript does not indicate that trial counsel knew that both attorneys could make a closing argument at the sentencing phase.

However, even assuming that trial counsel were deficient for not knowing that both

49

attorneys could offer a closing argument or that they could offer a closing argument after Petitioner, there is no prejudice from this minimal error. Petitioner has failed to show that he would have received a life sentence had one of his attorneys made the final closing argument. Petitioner's closing argument was not good, but it was not as bad as trial counsel suggest. Petitioner does not dispute the aggravating circumstances of these murders (torture, burglary, and two murders committed during one course of conduct). Petitioner struck each elderly victim at least nine times with a baseball bat, then left them to die in their home. The aggravating circumstances of this brutal crime far outweigh the mitigating circumstances. Any attempts by trial counsel to "refocus" the jury on the mitigating circumstances would have been a largely futile effort. Petitioner does not indicate what trial counsel could have said to minimize any impact of Petitioner's closing argument. Thus, Petitioner's suggestion that he could have mitigated the effects of Petitioner's closing argument and refocused the jury on the mitigating circumstances is just mere speculation. The jury was aware of the mitigating circumstances as well as the aggravating circumstances. The order of closing arguments would not have impacted the jury's decision. Petitioner has failed to show a reasonable likelihood that had his attorney given the final closing argument, he would have received a life sentence. *See Morva v. Zook*, 821 F.3d 517, 531 (4th Cir. 2016). Having failed to establish prejudice from this minimal error, Petitioner has not demonstrated that ground ten is a substantial claim under *Martinez* or that PCR counsel was ineffective for failing to raise it in the state PCR proceeding.

Accordingly, ground ten remains procedurally defaulted. Petitioner is not entitled to a *Martinez* evidentiary hearing on this insubstantial claim. Petitioner's objections as to ground ten are overruled and Respondents are entitled to summary judgment.

50

## Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a) of the Rules Governing Section 2254 Cases. A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court denies relief on the merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find that the court's assessment of the constitutional claims is debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003). When the district court denies relief on procedural grounds, the prisoner must demonstrate *both* that the dispositive procedural ruling is debatable, and that the petition states a debatable claim of the denial of a constitutional right. *Slack*, 529 U.S. at 484–85. In this case, the Court concludes that Petitioner has failed to make the requisite showing of "the denial of a constitutional right."

## Conclusion

For the foregoing reasons, the Court overrules Petitioner's objections and adopts the Magistrate Judge's R & R [ECF No. 223] to the extent it is consistent with this Order. Accordingly, the Court **GRANTS** Respondents' motion for summary judgment [ECF No. 207] and **DENIES AND DISMISSES** Petitioner's § 2254 petition in its entirety *with prejudice*. The Court **DENIES** a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

Florence, South Carolina
September 30, 2018

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge